UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGEL MENDEZ, VICENTE ARMIJOS, ERICK IXIM, REYNALDO LOPEZ, and LEDWIN APARICIO<br><br>*Plaintiffs*,<br><br>v.<br><br>PRIME MANAGEMENT CONSULTANTS LLC and DAVID RYAN FRIEDLANDER<br><br>*Defendants*. | Case No.   1:24-cv-1301 (AMN/CFH)<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiffs Angel Mendez, Vicente Armijos, Erick Ixim, Reynaldo Lopez and Ledwin Aparicio by their undersigned attorneys Worker Justice Center of New York, state and allege as follows:

**PRELIMINARY STATEMENT**

1. Plaintiffs Angel Mendez, Vicente Armijos, Erick Ixim, Reynaldo Lopez and Ledwin Aparicio (collectively, "Plaintiffs") worked for Defendants Prime Management Consultants LLC and David Ryan Friedlander (collectively, "Defendants") performing complete renovation and construction work. Plaintiffs regularly worked long hours, but they were not paid for all their hours worked and were not paid the overtime rate for hours worked above forty each week. For some weeks during their employment, Plaintiffs were not paid at all.

2. Moreover, Plaintiffs, manual workers, were often not paid weekly as required by New York Labor Law § 191(1)(a). Instead, Plaintiffs were regularly paid late throughout their employment, thus depriving them of their right to timely-paid wages.

3. Further, Plaintiffs were not provided with a notice of pay rate at hiring nor were Plaintiffs provided with accurate wage payment statements as required by New York Labor Law §§ 195(1) and (3).

4. To remedy these legal violations, Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"). Plaintiffs seek, *inter alia*, their unpaid wages, liquidated damages, and damages for other violations of the FLSA and NYLL.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 201 *et seq.* (FLSA).

6. The Court has supplemental jurisdiction over Plaintiffs' pendant state law claims under 28 U.S.C. § 1367. Plaintiffs' state law claims are part of the same case or controversy as Plaintiffs' federal claim.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this district.

8. Defendants reside and/or do business in this district.

## PARTIES

### Plaintiffs

9. Plaintiff Angel Mendez is an adult individual who has resided and currently resides in New York State.

10. Plaintiff Vicente Armijos is an adult individual who has resided and currently resides in New York State.

11. Plaintiff Erick Ixim is an adult individual who has resided and currently resides in New York State.

12. Plaintiff Reynaldo Lopez is an adult individual who has resided and currently resides in New York State.

13. Plaintiff Ledwin Aparicio is an adult individual who has resided and currently resides in New York State.

14. Plaintiff Mendez was employed by Defendants from approximately 2014 through February 29, 2024.

15. Plaintiff Armijos was employed by Defendants from approximately January 2023 through February 29, 2024.

16. Plaintiff Ixim was employed by Defendants from approximately March 2023 through February 29, 2024.

17. Plaintiff Lopez was employed by Defendants from approximately December 2022 through February 19, 2024.

18. Plaintiff Aparicio was employed by Defendants from approximately March 2022 through late-January 2024.

19. At all times relevant to this action, Plaintiffs were non-exempt "employees" of Defendants as defined by the FLSA and NYLL.

20. At all times relevant to this action, Plaintiffs were "manual workers" within the meaning of NYLL §§ 190(4) and 191(1)(a), and New York State Department of Labor regulations.

21. Plaintiffs' primary and native language is Spanish.

**Defendants**

Prime Management Consultants LLC

22. Defendant Prime Management Consultants LLC is a domestic business corporation doing business in the State of New York with its place of business located at 676 Broadway, Ulster Park, NY 12487.

23. At all times relevant to this action, Prime Management Consultants LLC was an "employer" of Plaintiffs as defined by the FLSA and NYLL.

24. At all times relevant to this action, Prime Management Consultants LLC "employed" Plaintiffs within the meaning of the FLSA and NYLL.

25. At all times relevant to this action, Prime Management Consultants LLC has been an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203(r)–(s).

26. At all times relevant to this action, Prime Management Consultants LLC had employees engaged in commerce or in the production of goods for commerce, or who handled, sold or otherwise worked on goods or materials that were moved in or produced for commerce by any person.

27. Upon information and belief, Prime Management Consultants LLC had gross sales made or business done in excess of $500,000 annually for each of the last five (5) years.

David Ryan Friedlander

28. Defendant David Ryan Friedlander is the owner of Prime Management Consultants LLC.

29. At all times relevant to this action, Defendant David Ryan Friedlander hired and fired employees, determined the work schedules of employees and determined the amount of wages that employees received, including Plaintiffs.

30. At all times relevant to this action, Defendant David Ryan Friedlander had the authority, and exercised the authority, to maintain employment records, determine rates of pay, assign work responsibilities, and otherwise control the terms and conditions of employment.

31. At all times relevant to the Complaint, Defendant David Ryan Friedlander had the power to stop any illegal pay practices at Prime Management Consultants LLC.

32. At all times relevant to this action, Defendant David Ryan Friedlander assigned work responsibilities and supervised and directed the work of employees.

33. Defendant David Ryan Friedlander was present at the work sites on a regular basis.

34. At all times relevant to this action, Defendant David Ryan Friedlander was Plaintiffs' "employer" within the meaning of the FLSA and the NYLL.

## FACTUAL ALLEGATIONS

35. Throughout their employment, Plaintiffs performed renovation and construction work for Defendants. Their duties included demolition, excavating, breaking concrete, framing, painting, carpentry work, some plumbing, and some electrical work.

36. Plaintiffs worked on projects throughout New York's Hudson Valley.

37. Plaintiffs' duties were exclusively manual and non-clerical.

38. Plaintiffs spent all their working time engaged in physical tasks.

Plaintiff Angel Mendez

39. From approximately 2014 through February 29, 2024, Plaintiff Mendez worked Monday through Saturday from about 8 a.m. to 5 p.m., with a 30-minutes lunch break each day, totaling approximately 51 hours per week. However, when there was a heavy workload, Plaintiff Mendez sometimes worked up to 70 or 80 hours per week.

40. From approximately 2014 through 2019, Plaintiff Mendez was paid $15 per hour.

41. In or about 2020, Plaintiff Mendez was paid $20 per hour.

42. From approximately 2021 through 2022, Plaintiff Mendez was paid $25 per hour.

43. From approximately 2023 through the end of his employment in 2024, Plaintiff Mendez was paid $30 per hour.

44. Plaintiff Mendez was normally paid by check but on occasion he was paid in cash.

45. Plaintiff Mendez was paid "straight time." That is, he was never paid an overtime premium rate for hours worked more than forty hours in a workweek.

46. On various occasions throughout his employment, Defendants "paid" Plaintiff Mendez with checks that had insufficient funds. When Plaintiff Mendez raised the issue, Defendant Friedlander would pay Plaintiff Mendez piecemeal in cash or failed to compensate him at all for the bounced check. Moreover, Defendants never reimbursed Plaintiff Mendez for the bank fees he incurred for these bounced checks.

47. For example, for the pay period of March 11 to March 17, 2023, Defendants gave Plaintiff Mendez a check with insufficient funds in the amount of $1,915. Defendants partially compensated Plaintiff Mendez for this pay period and did not reimburse him for the bounced check bank fees he incurred.

48. In another instance, for the pay period of January 13 to January 19, 2024, Defendants gave Plaintiff Mendez a check with insufficient funds in the amount of $1,572. Defendants partially compensated Plaintiff Mendez for this pay period and did not reimburse him for the bounced check bank fees he incurred.

49. From approximately September of 2023 through the end of his employment in February 2024, Defendants paid Plaintiff Mendez even less than "straight time" for his work. When Plaintiff Mendez asked Defendants about the rest of his expected payment, he was told that

he would be paid the following week. In reality, this pattern continued each week and Defendants were left owing Plaintiff Mendez thousands of dollars in wages.

50. Although Defendants should have paid Plaintiff Mendez weekly as a manual laborer, Defendants often paid him late or in partial payments.

51. As a result, for this and other weeks Plaintiff Mendez was employed by Defendants, Plaintiff Mendez's wages were paid late under NYLL § 191.

Plaintiff Vicente Armijos

52. From approximately January 3, 2023 through February 29, 2024, Plaintiff Armijos worked Monday through Saturday from around 7 a.m. or 8 a.m. to 4 p.m. or 5 p.m., with a 30 minute lunch break, totaling between 45 to 55 hours per week. However, when there was a heavy workload, Plaintiff Armijos sometimes worked at least 60 hours per week.

53. Throughout his employment, Plaintiff Armijos was paid $22 per hour.

54. Plaintiff Armijos was normally paid by check, but on several occasions was paid in cash.

55. Plaintiff Armijos was never paid an overtime premium rate for hours worked more than forty hours in a workweek.

56. On various occasions throughout his employment, Defendants gave Plaintiff Armijos checks that had insufficient funds. When Plaintiff Armijos raised the issue to Defendants, Defendant Friedlander would pay Plaintiff Armijos piecemeal in cash or failed to compensate him at all for the bounced check. Except on one occasion, Defendants did not reimburse Plaintiff Armijos for the bank fees he incurred for these bounced checks.

57. For example, for the pay period from September 23 to September 29, 2023, Defendants gave Plaintiff Armijos with a check with insufficient funds in the amount of $880.

          Defendants partially compensated Plaintiff Armijos for this pay period and did not reimburse him for the bounced check bank fees he incurred.

58.    From approximately September of 2023 through the end of his employment in February 2024, Defendants paid Plaintiff Armijos even less than "straight time" for his work. When Plaintiff Armijos asked Defendants about the rest of his expected payment, he was told that he would be paid the following week. In reality, this pattern continued each week and Defendants were left owing Plaintiff Armijos thousands of dollars in wages.

59.    For example, from January 13 to February 9, 2024, Defendants did not pay Plaintiff Armijos timely and made one lump sum payment towards the wages owed to him. For the week of January 13 to January 19, Plaintiff Armijos worked 41 hours and should have been paid $913.[1] For the week of January 20 to January 26, Plaintiff Armijos worked 47 hours and should have been paid $1,111.[2] For the week of January 27 to February 2, Plaintiff Armijos worked 55 hours and should have been paid $1,375.[3] For the week of February 3 to February 9, Plaintiff Armijos worked 54 hours and should have been paid $1,342.[4] After weeks of not receiving any payment, Defendants made a payment of $1,000. For these four weeks alone, Plaintiff Armijos is owed $2,741 in wages.

60.    Moreover, Defendants did not pay Plaintiff Armijos any wages at all for his last few weeks of work. Specifically, Plaintiff Armijos worked 20 hours during the week of February 10, 2024; 30 hours during the week of February 17, 2024; and 23 hours during the week of

---

[1] Plaintiff Armijos should have been paid $22/hr for his first 40 hours of work and $33 for each overtime hour. For 1/13/24-1/19/24, 40 hours x $22 = $880, plus 1 overtime hour x $33 = $913.
[2] 40 hours x $22=$880, 7 overtime hours x $33= $231, totaling $1,111.
[3] 40 hours x $22=$880, 15 overtime hours x $33= $495, totaling $1,375.
[4] 40 hours x $22=$880, 14 overtime hours x $33= $462, totaling $1,342.

February 24, 2024. Accordingly, Defendants owe Plaintiff Armijos a total of $1,606 for these three weeks of work.

61. Defendants did not reimburse Plaintiff Armijos for out-of-pocket expenses. For example, from around June 2023 through the end of his employment, Plaintiff Armijos mainly used his personal vehicle for work-related transportation, including driving himself and other coworkers from the work warehouse to a job site. Although he spent about $150 a week in gas and $25-40 a week in tolls for this work travel, Defendants did not reimburse him.

62. Although Defendants should have paid Plaintiff Armijos weekly as a manual laborer, Defendants often paid him late or in partial payments.

63. As a result, for this and other weeks Plaintiff Armijos was employed by Defendants, Plaintiff Armijos's wages were paid late under NYLL § 191.

Plaintiff Erick Ixim

64. From approximately March 2023 through February 29, 2024, Plaintiff Ixim worked Monday through Saturday from about 8 a.m. to 5 p.m., with a 30-minute lunch break each day, totaling approximately 51 hours per week. However, when there was a heavy workload, Plaintiff Ixim sometimes worked at least 60 hours per week.

65. Throughout his employment, Plaintiff Ixim was paid $20 per hour.

66. Throughout his employment, Plaintiff Ixim was never paid an overtime premium for hours worked more than forty hours in a workweek.

67. Plaintiff Ixim was normally paid by check, but on several occasions was paid in cash.

68. From approximately September of 2023 through the end of his employment in February 2024, Defendants paid Plaintiff Ixim even less than "straight time" for his work. When Plaintiff Ixim asked Defendants about the rest of his expected payment, Defendant

69. Friedlander told him that he would be paid the following week. In reality, this pattern continued each week, and Defendants were left owing Plaintiff Ixim thousands of dollars in wages.

69. Moreover, Defendants did not Plaintiff Ixim any wages at all for his last weeks of work. For example, during the week of February 23, 2024, Plaintiff Ixim worked 29.5 hours and did not receive any wages. Accordingly, he is owed $590 for that pay period.

70. Although Defendants should have paid Plaintiff Ixim weekly as a manual laborer, Defendants often paid him late or in partial payments.

71. As a result, for this and other weeks Plaintiff Ixim was employed by Defendants, Plaintiff Ixim's wages were paid late under NYLL § 191.

Plaintiff Reynaldo Lopez

72. From approximately December 2022 through February 19, 2024, Plaintiff Lopez worked Monday through Saturday from about 8 a.m. to 5 p.m., with a 30-minute lunch break each day, totaling approximately 51 hours per week. However, when there was a heavy workload, Plaintiff Lopez sometimes worked at least 60 hours per week.

73. From the beginning of his employment until about November 2023, Plaintiff Lopez was paid $20 per hour.

74. From approximately December 2023 through the end of his employment, Plaintiff Lopez was paid $22 per hour.

75. Plaintiff Lopez was normally paid by check, but on a few occasions was paid in cash.

76. Plaintiff Lopez was never paid an overtime premium rate for hours worked more than forty hours in a workweek.

77. On various occasions throughout his employment, Defendants gave Plaintiff Lopez checks that had insufficient funds. When Plaintiff Lopez raised the issue to Defendants, Defendant Friedlander would pay Plaintiff Lopez piecemeal in cash or failed to compensate him completely for the bounced check. In reality, this pattern continued each week and Defendants were left owing Plaintiff Lopez thousands of dollars in wages. Moreover, Defendants never reimbursed Plaintiff Lopez for the bank fees he incurred for these bounced checks.

78. For example, for the pay period beginning November 2, 2023, Defendants gave Plaintiff Lopez a check with insufficient funds in the amount of $1,246. Defendants partially compensated Plaintiff Lopez for this pay period and did not reimburse him for the bounced check bank fees he incurred.

79. Moreover, Defendants did not Plaintiff Lopez any wages at all for his last weeks of work. For example, during the week of February 8, 2024, Plaintiff Lopez worked 21 hours and did not receive any wages. Accordingly, he is owed $420 for that pay period.

80. Although Defendants should have paid Plaintiff Lopez weekly as a manual laborer, Defendants often paid him late or in partial payments.

81. As a result, for this and other weeks Plaintiff Lopez was employed by Defendants, Plaintiff Lopez's wages were paid late under NYLL § 191.

Plaintiff Ledwin Aparicio

82. From approximately March 2022 through the end of his employment, Plaintiff Aparicio worked Monday through Saturday from about 8 a.m. to 5 p.m., with a 30-minute lunch break each day, totaling approximately 51 hours per week. However, when there was a heavy workload, Plaintiff Aparicio sometimes worked at least 60 hours per week.

83. Throughout his employment, Plaintiff Aparicio was paid $22 per hour.

84. Plaintiff Aparicio was normally paid by check, but on several occasions was paid in cash.

85. Plaintiff Aparicio was never paid an overtime premium rate for hours worked more than forty hours in a workweek.

86. On various occasions throughout his employment, Defendants gave Plaintiff Aparicio checks that had insufficient funds. When Plaintiff Aparicio raised the issue, Defendant Friedlander would pay Plaintiff Aparicio piecemeal in cash and tell him that he would pay the rest in the following week's pay. The same pattern would continue the following week and Defendants were left owing Plaintiff Aparicio thousands of dollars in wages. Moreover, Defendants never reimbursed Plaintiff Aparicio for the bank fees he incurred for these bounced checks.

87. For example, for the pay period from June 24 to June 30, 2023, Defendants gave Plaintiff Aparicio a check with insufficient funds in the amount of $1,056. Defendants partially compensated Plaintiff Aparicio for this pay period and did not reimburse him for the bounced check bank fees he incurred.

88. Defendants did not pay Plaintiff Aparicio for his last few weeks of work. For example, for the week of January 28, 2024, Plaintiff Aparicio worked 49.5 hours. He should have been paid $880 for his first forty hours of work and $313.50 for the 19.5 overtime hours worked this week. Defendants owe Plaintiff Aparicio $1,193.50 for this week.

89. Defendants did not reimburse Plaintiff Aparicio for out-of-pocket expenses such as gas and tolls when he was required to use his own vehicle for work, totaling approximately $400.

90. Although Defendants should have paid Plaintiff Aparicio weekly as a manual laborer, Defendants often paid him late or in partial payments.

91. As a result, for this and other weeks Plaintiff Aparicio was employed by Defendants, Plaintiff Aparicio's wages were paid late under NYLL § 191.

92. Defendants also failed to furnish Plaintiffs, at the time they began working for Defendants, written notices of their wage rates or written disclosures of the other information required by NYLL § 195(1) in Plaintiffs' primary language.

93. Defendants never furnished Plaintiffs with written notices or disclosures of the information required by NYLL § 195(1), including notices of any changes to Plaintiffs' rate of pay.

94. In addition, Defendants failed to furnish proper and accurate wage statements to all three Plaintiffs as required by NYLL § 195(3). Among other things, the wage statements failed to include Plaintiffs' hourly rates of pay, and did not include all hours worked by Plaintiffs.

95. Since Defendants never issued hiring notices or wage statements to Plaintiffs, these violations made it difficult for Plaintiffs to keep track of the running balance Defendants owed them and hindered their ability to confront Defendants sooner about their owed wages.

96. Each Plaintiff was unaware that they should have been getting paid an overtime rate, which a hiring notice in compliance with labor law regulations would have clarified, allowing them to discover the violation of their rights sooner and avoiding some of the harm they experienced.

97. As a result, Defendants' failure to provide Plaintiffs the legally required hiring notices and wage statements directly contributed to the amount of wage theft experienced by Plaintiffs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (FLSA -- Overtime Compensation Violations)

98. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

99. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203.

100. Defendants failed to pay Plaintiffs overtime wages at rates at least one-and-a-half times their regular rate of pay in violation of 29 U.S.C. § 207, throughout the entirety of Plaintiffs' employment.

101. Defendants' failure to pay Plaintiffs their lawful overtime wages was willful. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages and an equal amount of liquidated damages, as well as attorneys' fees, costs of Court, and interest.

## SECOND CAUSE OF ACTION
### (NYLL – Overtime Compensation Violations)

102. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

103. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

104. At all times relevant to this action, Defendants failed to pay Plaintiffs overtime wages at rates at least one-and-a-half times the regular rate of pay for each hour worked in excess of forty hours per week, in violation of the NYLL and accompanying regulations.

105. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, an equal amount as liquidated damages, as well as attorneys' fees, costs of Court, and interest.

## THIRD CAUSE OF ACTION
### (NYLL – Late Payment of Wages in Violation of NYLL § 191)

106. Plaintiffs re-allege and incorporate by reference the foregoing allegations as if fully set forth herein.

107. Under NYLL § 191(a)(i) and supporting New York State Department of Labor Regulations, manual workers must be paid weekly and not later than seven calendar days after the end of the week in which wages are earned.

108. Defendants willfully failed to pay Plaintiffs their wages weekly, in violation of New York Labor Law § 191(a). Instead, Defendants, at times, paid Plaintiffs their wages piecemeal.

109. As a result of Defendants' failure to pay Plaintiffs their wages weekly as required by NYLL § 191(a)(1), at least some of Plaintiffs wages were paid later than seven calendar days after the end of the week in which wages were earned.

110. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants an equal amount of their late wages as liquidated damages, as well as attorneys' fees, costs of Court, and interest.

111. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, an equal amount as liquidated damages, as well as attorneys' fees, costs of Court, and interest.

### FOURTH CAUSE OF ACTION
### (NYLL – Failure to Pay Promised Wage for All Hours Worked)

112. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth therein.

113. Defendants willfully failed to pay Plaintiffs promised wages for all hours worked, in violation of New York Labor Law § 193.

114. Plaintiffs are therefore entitled to their unpaid wages as mandated by New York Labor Law, plus an additional 100 percent as liquidated damages, as a consequence of the

Defendants' unlawful acts and omissions in accordance with New York Labor Law §§ 198, 663, 681.

115. Plaintiffs also seek, and are entitled to, attorneys' fees incurred by counsel, costs of Court, and interest.

### FIFTH CAUSE OF ACTION
### (NYLL – Wage Notice and Wage Statement Violations)

116. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

117. Defendants failed to provide Plaintiffs, at the time of their hiring or thereafter, wage notices in their primary language containing their rates of pay and other information as required by New York Labor Law § 195(1).

118. Defendants also failed to provide Plaintiffs with accurate wage statements with every payment of wages which provided all of the information required under New York Labor Law § 195(3).

119. For Defendants' violation of New York Labor Law § 195(1), Plaintiffs are entitled to $50 for each day of work in which this violation continued to occur, in an amount not to exceed $5,000 for each Plaintiff, pursuant to New York Labor Law §198(1-b).

120. For Defendants' violation of New York Labor Law § 195(3), Plaintiffs are entitled to $250 for each day of work in which this violation continued to occur, in an amount not to exceed $5,000 for each Plaintiff, pursuant to New York Labor Law §198(1-d).

121. Plaintiffs also seek and are entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter an Order:

a. assuming jurisdiction over this action;

b. declaring Defendants violated the FLSA and New York Labor Law;

c. granting judgment to Plaintiffs on their FLSA claims and awarding Plaintiffs their unpaid wages and an equal amount in liquidated damages;

d. granting judgment to Plaintiffs on their New York Labor Law claims and awarding Plaintiffs their unpaid wages, applicable statutory damages, and liquidated damages as provided for by statute;

e. awarding Plaintiffs prejudgment and postjudgment interest as allowed by law;

f. awarding Plaintiffs their costs and reasonable attorneys' fees; and

g. granting such further relief as the Court deems just and proper.

DATED: Hawthorne, NY
October 23, 2024

**WORKER JUSTICE CENTER OF NEW YORK**

*s/ Maureen Hussain*
Maureen Hussain
Cristina Brito
Worker Justice Center of New York
245 Saw Mill River Road, Suite 106
Hawthorne, NY 10532
(845) 331-6615
mhussain@wjcny.org
cbrito@wjcny.org

*Attorneys for Plaintiffs*