**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

ANGEL MENDEZ, VICENTE ARMIJOS, ERICK
IXIM, REYNALDO LOPEZ, and LEDWIN
APARICIO,

                Plaintiffs,

     v.                                  1:24-cv-01301 (AMN/PJE)

PRIME MANAGEMENT CONSULTANTS LLC
and DAVID RYAN FRIEDLANDER,

                Defendants.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **WORKER JUSTICE CENTER OF NEW YORK** | **CRISTINA BRITO, ESQ.** |
| 245 Saw Mill River Road – Suite 106 | |
| Hawthorne, New York 10532 | |
| | |
| 9 Main Street | **MAUREEN HUSSAIN, ESQ.** |
| Kingston, New York 12401 | |
| *Attorneys for Plaintiffs* | |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

On October 23, 2024, plaintiffs Angel Mendez, Vicente Armijos, Erick Ixim, Reynaldo Lopez, and Ledwin Aparicio (collectively, "Plaintiffs") commenced this action against defendants Prime Management Consultants LLC ("Prime Management") and David Ryan Friedlander (together, "Defendants"), alleging violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"). Dkt. No. 1 ("Complaint"). Presently before the Court is Plaintiffs' motion for a default judgment under Rule 55(b) of the Federal Rules of Civil Procedure. Dkt. No. 15 (the "Motion").

1

For the reasons set forth below, the Court grants the Motion.

## II.    BACKGROUND

### A.  Parties

Plaintiffs are adults who reside in New York state.  Dkt. No. 1 at ¶¶ 9-13.  Their primary and native language is Spanish.  *Id.* at ¶ 21.  Defendant Friedlander is alleged to be the owner of Prime Management, *id.* at ¶ 28, an entity organized under New York state law and with a principal place of business in Ulster Park, New York, *id.* at ¶ 22.

### B.  Plaintiffs' Factual Allegations

Plaintiffs were employed by Defendants to perform renovation and construction work throughout New York's Hudson Valley.  *Id.* at ¶¶ 35-36.  Plaintiffs' work was exclusively manual and non-clerical and involved demolition, excavating, breaking concrete, framing, painting, carpentry work, some plumbing, and some electrical work.  *Id.* at ¶¶ 35, 37.  Largely as a result of Plaintiffs' labor, Defendant Prime Management had annual gross sales in excess of $500,000 for years.  *Id.* at ¶ 27.  As part of that enterprise, Defendant Friedlander hired and fired employees, determined the work schedules of employees, determined the amount of wages that employees received, and maintained employment records.  *Id.* at ¶¶ 29-30.  He also assigned work responsibilities and supervised and directed the work of employees, including by being regularly present on work sites.  *Id.* at ¶¶ 30, 32-33.  Defendant Friendlander also exerted this control over Plaintiffs, and would additionally pay them with cash and checks.  *See, e.g., id.* at ¶¶ 29, 34, 46, 56, 77, 86.  Plaintiffs further detail their alleged employment by Defendants as follows.

Plaintiff Mendez was employed by Defendants from approximately 2014 through February 29, 2024.  *Id.* at ¶ 14.  During this time, Plaintiff Mendez's usual work schedule was Monday through Saturday from approximately 8:00 a.m. to 5:00 p.m., with a thirty-minute lunch break

each day, totaling approximately fifty-one hours per week. *Id.* at ¶ 39.  Plaintiff Mendez worked as many as seventy to eighty hours per week when there was a particularly heavy workload. *Id.* Plaintiff Mendez was to be paid fifteen to thirty dollars per hour. *Id.* at ¶¶ 40-45.

Plaintiff Aparicio was employed by Defendants from approximately March 2022 through late January 2024. *Id.* at ¶ 18.  During this time, Plaintiff Aparicio's usual work schedule was Monday through Saturday from approximately 8:00 a.m. to 5:00 p.m., with a thirty-minute lunch break each day, totaling approximately fifty-one hours per week. *Id.* at ¶ 82.  Plaintiff Aparicio worked as many as sixty hours per week when there was a particularly heavy workload. *Id.* Plaintiff Aparicio was to be paid twenty-two dollars per hour. *Id.* at ¶¶ 83.

Plaintiff Lopez was employed by Defendants from approximately December 2022 through February 19, 2024. *Id.* at ¶ 17.  During this time, Plaintiff Lopez's usual work schedule was Monday through Saturday from approximately 8:00 a.m. to 5:00 p.m., with a thirty-minute lunch break each day, totaling approximately fifty-one hours per week. *Id.* at ¶ 72.  Plaintiff Lopez worked as many as sixty hours per week when there was a particularly heavy workload. *Id.* Plaintiff Lopez was to be paid twenty to twenty-two dollars per hour. *Id.* at ¶¶ 73-74.

Plaintiff Armijos was employed by Defendants from approximately January 2023 through February 29, 2024. *Id.* at ¶ 15.  During this time, Plaintiff Armijos' usual work schedule was Monday through Saturday from approximately 7:00 a.m. or 8:00 a.m. to 4:00 p.m. or 5:00 p.m., with a thirty-minute lunch break each day, totaling between approximately forty-five and fifty-five hours per week. *Id.* at ¶ 52.  Plaintiff Armijos worked as many as sixty hours per week when there was a particularly heavy workload. *Id.*  Plaintiff Armijos was to be paid twenty-two dollars per hour. *Id.* at ¶ 53.

Plaintiff Ixim was employed by Defendants from approximately March 2023 through

February 29, 2024. *Id.* at ¶ 16. During this time, Plaintiff Ixim's usual work schedule was Monday through Saturday from approximately 8:00 a.m. to 5:00 p.m., with a thirty-minute lunch break each day, totaling approximately fifty-one hours per week. *Id.* at ¶ 64. Plaintiff Ixim worked as many as sixty hours per week when there was a particularly heavy workload. *Id.* Plaintiff Ixim was to be paid twenty dollars per hour. *Id.* at ¶ 65.

Each Plaintiff alleges that he was not paid overtime wages, that he was not always paid his promised wages and that, instead of being paid weekly, he was repeatedly paid late. *Id.* at ¶¶ 45, 49-50 (Plaintiff Mendez); *id.* at ¶¶ 85, 88, 90 (Plaintiff Aparicio); *id.* at ¶¶ 76, 79-80 (Plaintiff Lopez); *id.* at ¶¶ 55, 58-60, 62 (Plaintiff Armijos); *id.* at ¶¶ 66, 68-70 (Plaintiff Ixim).

All Plaintiffs except Plaintiff Ixim also allege that they were sometimes paid with checks that bounced and that they were not compensated for the resulting bank fees. *Id.* at ¶¶ 46-48 (Plaintiff Mendez); *id.* at ¶¶ 86-87 (Plaintiff Aparicio); *id.* at ¶¶ 77-78 (Plaintiff Lopez); *id.* at ¶¶ 56-57 (Plaintiff Armijos). Plaintiffs Aparicio and Armijos also allege that they were not reimbursed for certain out-of-pocket expenses. *Id.* at ¶ 89 (Plaintiff Aparicio); *id.* at ¶ 61 (Plaintiff Armijos).

Plaintiffs further allege that Defendants never furnished, *inter alia*, written wage notices in Plaintiffs' primary language, nor proper wage statements that included Plaintiffs' hourly rates of pay and all hours Plaintiffs had worked. *See, e.g., id.* at ¶¶ 92-97.

### C. Plaintiffs' Legal Claims

Plaintiffs assert one claim under the FLSA, for overtime compensation. *Id.* at ¶¶ 98-101. Plaintiffs also assert four claims under the NYLL, for overtime compensation, late payment of wages, failure to pay promised wages, and wage notice and wage statement violations. *Id.* at ¶¶ 102-121. The Motion requests a default judgment "of at least $381,204.81" plus interest. Dkt.

4

No. 15-1 at 5.[1]

### D.  Procedural History

Plaintiffs commenced this action on October 23, 2024.  Dkt. No. 1.  Plaintiffs served Defendant Prime Management on January 14, 2025, Dkt. No. 9, and Defendant Friedlander on January 16, 2025, Dkt. No. 10.  Defendants have not appeared or responded to the Complaint.  *See generally* Docket Sheet.

On March 4, 2025, Plaintiffs filed a request for the entry of default pursuant to Rule 55(a) of the Federal Rule of Civil Procedure, a request which the Clerk of Court subsequently granted. Dkt. Nos. 12-13.  On April 18, 2025, Plaintiffs filed the Motion, requesting the entry of a default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.  Dkt. No. 15.[2]

## III.   STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  The first step is governed by Rule 55(a), which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  *Id.* (quoting Fed. R. Civ. P. 55(a)); *see also* N.D.N.Y. L.R. 55.1 (setting forth affidavit requirements).   Entry of a default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

[2] Plaintiffs also each submit a factual affidavit in support of the Motion.  Dkt. Nos. 15-7, 15-8, 15-9, 15-10, 15-11.  *See Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co., Ltd.*, 505 F. Supp. 3d 137, 150-51, 150 n.6 (N.D.N.Y. 2020).

plaintiff." *Mickalis*, 645 F.3d at 128. The second step "requires the plaintiff to seek a judgment by default under Rule 55(b)." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 505 (2d Cir. 2011). Entry of a default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled[.]" *Mickalis*, 645 F.3d at 128. A default judgment "ordinarily must be entered by the district judge, rather than by the clerk of court, except in certain circumstances[.]" *Id.*; *see also* N.D.N.Y. L.R. 55.2 (setting forth requirements for requesting a default judgment).

"Before entering a default judgment, the court 'must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for [a] default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law.'" *Windward Bora, LLC v. Brown*, No. 21-cv-03147, 2022 WL 875100, at *2 (E.D.N.Y. Mar. 24, 2022) (alteration in original) (quoting *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-cv-6722, 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020)). Additionally, "[t]here must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citations omitted). When evaluating a request for a default judgment, a "district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to 'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations." *Mickalis*, 645 F.3d at 129 (quoting Fed. R. Civ. P. 55(b)(2)(B)-(C)).

While a court may enter a default judgment if the requisite standard is satisfied, the Second Circuit has cautioned that default judgments "are generally disfavored and are reserved for rare occasions[.]" *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "Because we have 'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . we have characterized a district court's discretion in proceeding under Rule 55 as 'circumscribed.'" *Mickalis*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron*, 10 F.3d at 95; and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)).

## IV.    DISCUSSION

### A.  Jurisdictional Requirements

The Court first addresses its jurisdiction over this matter. While a "plaintiff has the burden to establish jurisdiction, a federal court has an independent obligation to determine whether subject-matter jurisdiction exists 'even in the absence of a challenge from any party.'" *Wilmington Sav. Fund Soc'y, FSB as tr. of Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 330 (E.D.N.Y. 2024) (quoting *Chapman v. U.S. Dep't of Just.*, 558 F. Supp. 3d 45, 48 (E.D.N.Y. 2021)). Federal question jurisdiction exists over Plaintiffs' FLSA claim, 28 U.S.C. § 1331, and supplemental jurisdiction exists over Plaintiffs' NYLL claims, 28 U.S.C. § 1367. The Court has personal jurisdiction over Defendants, who are alleged to reside or do business within the Northern District of New York and who were served here. Dkt. No. 1 at ¶¶ 8, 22, 33; Dkt. Nos. 9-10. Accordingly, the Court finds that the jurisdictional requirements are satisfied.[3] *Windward Bora*, 2022 WL 875100, at *2.

---

[3] Venue is also proper in this District, as it is where a substantial part of relevant events allegedly occurred. 28 U.S.C. § 1391; Dkt. No. 1 at ¶ 7.

## B.  Procedural Requirements

Here, Plaintiffs requested and received an entry of default in compliance with Rule 55(a) and Local Rule 55.1.  Dkt. Nos. 12-13.  Plaintiffs then filed the present Motion in accordance with Rule 55(b) and Local Rule 55.2.  Dkt. No. 15.  The Motion does not include a certificate of service demonstrating that Defendants received the Motion.  *See generally id.*  But because Defendants were served at the commencement of this action and have not "appeared personally or by a representative," Fed. R. Civ. P. 55(b)(2), Plaintiffs were not required to effectuate further service with respect to the Motion.  *See, e.g., Alston v. City of New York*, No. 22-cv-5395, 2024 WL 4100175, at *5 (E.D.N.Y. Sept. 5, 2024) ("This limitation in the rule is based on the common-sense assumption that if a party has ignored service of a summons and complaint, a plaintiff does not have to chase him down with subsequent notices to see if he has changed his mind."), *appeal filed*, No. 24-2521 (2d Cir. Sept. 25, 2024); *Rove LLC v. Antonio168*, No. 20-cv-02124, 2023 WL 6796034, at *3 n.4 (S.D.N.Y. Oct. 13, 2023) (similar).  Accordingly, the Court finds that Plaintiffs have satisfied the procedural requirements for seeking a default judgment.  *Windward Bora*, 2022 WL 875100, at *2.

## C.  Liability as a Matter of Law

"To enter a default judgment, a district court must determine whether—after taking all well-pleaded allegations as true and making reasonable inferences in the plaintiff's favor—the plaintiff's 'allegations establish . . . liability as a matter of law.'" *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024) (alteration in original) (first quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); and then citing *Mickalis*, 645 F.3d at 137 n.23); *see also Moore v. Booth*, 122 F.4th 61, 69 (2d Cir. 2024) ("[W]e have explained that 'prior to entering [a] default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability

8

as a matter of law.'") (second alteration in original) (quoting *Mickalis*, 645 F.3d at 137).

### 1. FLSA Claim

The Complaint's first claim is that Defendants violated the FLSA by undercompensating Plaintiffs for the overtime they worked.  Dkt. No. 1 at ¶¶ 98-101.

### i. Employment Relationship

"To establish liability under the FLSA, 'a plaintiff must show that he or she is an 'employee' of the defendant within the meaning of the FLSA' and that the defendant is an employer subject to the FLSA." *Yanchaliquin v. Chuqui Builders Corp.*, No. 23-cv-504, 2023 WL 7299810, at *3 (N.D.N.Y. Nov. 6, 2023) (first quoting *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 31-32 (E.D.N.Y. 2015); and then citing *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 453-54 (S.D.N.Y. 2014)).

"The FLSA defines 'employee' by tautology: an 'individual employed by an employer.'" *Wang v. Hearst Corp.*, 877 F.3d 69, 72 (2d Cir. 2017) (quoting 29 U.S.C. § 203(e)(1)).  Plaintiffs allege that Defendants employed each of them as manual laborers throughout New York's Hudson Valley for between one and ten years.  *See supra* Section II.B.  Plaintiffs each performed renovation and construction work and were paid, or were supposed to be paid, on a weekly basis. *Id.*  As other district courts have found in the default judgment context, such allegations are sufficient to establish employee status under the FLSA.  *See, e.g., Yanchaliquin*, 2023 WL 7299810, at *3 ("Plaintiff alleges that Defendants employed him for approximately six months in 2022.  He performed roof-building duties and was paid wages on a biweekly basis.  Accordingly, 'for purposes of this default, [Plaintiff] qualifies as an 'employee' under the FLSA.'") (alteration in original) (citations omitted).

Next, the Motion argues that both Defendants were Plaintiffs' employers for purposes of the FLSA. Dkt. No. 15-1 at 9-10. An employer is subject to the FLSA's overtime provisions if "(1) their employees are 'engaged in commerce,' or (2) the employer is an 'enterprise engaged in commerce.'" *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 366-67 (E.D.N.Y. 2022) (first quoting 29 U.S.C. §§ 206, 207; and then citing *Padillia v. Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009)). These two categories are commonly referred to as individual coverage and enterprise coverage, respectively.

The Motion argues that the Complaint sufficiently alleges enterprise coverage with respect to Defendant Prime Management. Dkt. No. 15-1 at 9-10. "An employer is an 'enterprise engaged in commerce' if it is an enterprise that 'has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and [ ] has an annual gross volume of sales made or business done of not less than $500,000.'" *Lozada v. Haitech Works LLC*, No. 24-cv-01041, 2025 WL 2912659, at *3 (N.D.N.Y. Oct. 14, 2025) (citation omitted). The Court agrees that the Complaint alleges that these requirements are satisfied. Dkt. No. 1 at ¶¶ 26-27; *Gonzales v. Gan Israel Pre-School*, No. 12-cv-06304, 2014 WL 1011070, at *7 (E.D.N.Y. Mar. 14, 2014) ("Most cases in this Circuit that discuss this issue require that a plaintiff plead the specific fact that the defendant did $500,000 or more in annual gross business."). And while such a "bare recitation, amounting to a legal conclusion, is not automatically assumed to be true, in this context, the Court finds it sufficient." *Yanchaliquin*, 2023 WL 7299810, at *3 (finding complaint had adequately alleged FLSA enterprise coverage for purposes of default judgment). Moreover, the Complaint's factual allegations—regarding the number of individuals employed by Defendants, the length of their employment, the value of their labor, and the nature of their renovation and construction work—permit the Court to reasonably

infer that the requirements for enterprise coverage are satisfied here. *See supra* Section II.B; *see also Yanchaliquin*, 2023 WL 7299810, at *3 ("[H]ere, it is reasonable to infer that the goods necessary to provide roof building services—and generate over $500,000 in annual sales—do not come exclusively from New York State.") (citations omitted); *Varghese v. Plecosystems Inc.*, No. 23-cv-03830, 2025 WL 2318593, at *3 (S.D.N.Y. Aug. 12, 2025) ("[V]irtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.") (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

The Motion further argues that the Complaint sufficiently alleges that Defendant Friedlander is also Plaintiffs' employer for purposes of the FLSA, based on his control over various aspects of their employment. Dkt. No. 15-1 at 9-10. As the Second Circuit has made clear, "this Circuit 'treat[s] employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'" *Perez Perez v. Escobar Constr., Inc.*, No. 23-1240-cv, 2024 WL 3594325, at *2 (2d Cir. July 31, 2024) (summary order) (alteration in original) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008)). "The underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees: 'control over a company's actual 'operations' in a manner that relates to a plaintiff's employment.'" *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)). Courts frequently consider certain factors to examine the degree of control exerted by an alleged employer, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Kolonziaa v. Allied Cmty. Res., Inc.*, No. 25-1034-cv, 2026 WL 707268, at *2 (2d Cir. Mar. 13, 2026) (summary order) (quoting

11

*Barfield*, 537 F.3d at 142-43).  The Court agrees with Plaintiffs that the Complaint plausibly alleges that Defendant Friedlander controlled their employment to an extent sufficient to render him an employer for purposes of the FLSA.  Dkt. No. 15-1 at 9-10; *see also supra* Section II.B. The factual affidavits Plaintiffs submit provide additional details about this control, including communications demonstrating Defendant Friedlander's supervision and direction of where, how, and when Plaintiffs worked, as well as the amount and timing of their wages.  *See, e.g.,* Dkt. No. 15-7 at 2-5, 7-14, 25-29; Dkt. No. 15-8 at 2-5, 8-11, 17-23; Dkt. No. 15-9 at 2-4; Dkt. No. 15-10 at 2-4, 9-11, 13; Dkt. No. 15-11 at 2-5; *see also Hunter*, 505 F. Supp. 3d at 150-51, 150 n.6.

In sum, Plaintiffs have established that they were employees and that both Defendants were employers for purposes of a default judgment on their FLSA overtime claim.

### ii.  Overtime Claim

As relevant here, the FLSA "requires a regulated employer who 'employ[s] any of his employees . . . for a workweek longer than forty hours' to compensate that employee 'at a rate not less than one and one-half times the regular rate at which he is employed.'"  *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 114 (2d Cir. 2023) (alterations in original) (quoting 29 U.S.C. § 207(a)(1)).  "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1)).

The Motion argues that the Complaint sufficiently alleges that each Plaintiff "routinely worked more than 40 hours per week and was not paid at the overtime rate."  Dkt. No. 15-1 at 10. The Second Circuit has stated that the pleading standard applicable to FLSA overtime claims is satisfied "if plaintiffs allege that their regularly scheduled workweek for a given period of time

included more than forty hours of work, so that they were eligible for overtime during <u>every</u> week in which they worked their regular schedule." *Herrera*, 84 F.4th at 117.  As detailed above, the alleged regular work schedule of each Plaintiff consisted of more than forty hours in a given week.  *See supra* Section II.B.  "In that case, a plaintiff, as the Plaintiffs have done here, need only allege the period of time during which they were employed." *Herrera*, 84 F.4th at 117.  As also detailed above, the Complaint further alleges the dates during which Defendants employed each Plaintiff.  *See supra* Section II.B.  Plaintiffs' submission in connection with the Motion enhances the plausibility of these allegations by specifying the number of hours each Plaintiff worked each week he was employed by Defendants and the overtime work for which he was undercompensated.  *See generally* Dkt. No. 15-12; *see also Herrera*, 84 F.4th at 114 ("[T]he plaintiff need not keep 'careful records' of the numbers of hours worked each week or calculate and 'plead their hours with mathematical precision.'  In fact, a complaint need not even 'set forth the approximate number of unpaid regular and overtime hours allegedly worked,' although such an 'approximation . . . may help draw a plaintiff's claim closer to plausibility.'") (first quoting *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013); and then quoting *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 n.10 (2d Cir. 2013)).

Accordingly, the Court finds that Plaintiffs have established that Defendants violated the FLSA by undercompensating Plaintiffs for the overtime they worked.

### 2. NYLL Overtime Claim

The Complaint's second claim is that Defendants also violated the NYLL by undercompensating Plaintiffs for the overtime they worked.  Dkt. No. 1 at ¶¶ 102-05.

The Motion argues that since the Complaint's factual allegations are sufficient to state an FLSA overtime claim, these allegations are also sufficient to state an NYLL overtime claim.  Dkt.

No. 15-1 at 10.  The Court agrees.  "Because 'the relevant portions of [the] NYLL do not diverge from the requirements of the FLSA, conclusions about FLSA allegations apply equally to NYLL overtime claims.'"  *Vega v. Fox Bldg. Grp., Inc.*, No. 24-cv-785, 2025 WL 1785045, at *4 (N.D.N.Y. June 27, 2025) (first quoting *Dejesus*, 726 F.3d at 89 n.5; and then citing *Yanchaliquin*, 2023 WL 7299810, at *4).  As a result, the Court finds that Plaintiffs have established that Defendants violated the NYLL by undercompensating Plaintiffs for the overtime they worked, for the same reasons as those set forth with respect to their FLSA claim.  *See supra* Section IV.C.1.

### 3.  NYLL Late Payment Claim

The Complaint's third claim is that Defendants violated the NYLL by paying Plaintiffs late, including through piecemeal payments.  Dkt. No. 1 at ¶¶ 106-11.  The Motion argues that Defendants violated Section 191(1)(a) of the NYLL by doing so.  Dkt. No. 15-1 at 11.

"Section 191(1)(a) requires, by law, that employers pay a manual worker 'weekly and not later than seven calendar days after the end of the week in which the wages are earned.'"  *Bazinett v. Pregis LLC*, 720 F. Supp. 3d 154, 165 (N.D.N.Y. 2024).  "As of the date of this Memorandum-Decision and Order, there is no New York Court of Appeals decision regarding a private right of action under NYLL § 191."  *Shugars v. Masonite Corp.*, No. 22-cv-1237, 2023 WL 7280902, at *6 (N.D.N.Y. Nov. 3, 2023).  There is, however, presently "a split at the appellate level in the New York state courts as to whether NYLL § 191, in conjunction with NYLL § 198, provides a private right of action[.]"  *DeDyn v. Gintzler Graphics, Inc.*, No. 23-cv-1291, 2026 WL 221434, at *6 (W.D.N.Y. Jan. 28, 2026).  The Appellate Division, First Department, of the New York State Supreme Court has found that such a private right of action exists.  *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286 (App. Div. 2019).  The Appellate Division, Second Department, of the New York State Supreme Court has "respectfully disagree[d] with the reasoning of *Vega*

and decline[d] to follow it."  *Grant v. Glob. Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117, 122 (App. Div. 2024).

"The central dispute between the *Vega* and *Grant* courts—and among the federal district courts assessing those opinions—has been whether *late* payment under § 191(1)(a) is a form of *underpayment* as contemplated by § 198 and, therefore, whether a claim under § 191(1)(a) is a 'wage claim' for which employees have a private cause of action."  *DeDyn*, 2026 WL 221434, at *6.  The vast majority of federal courts that have considered this issue have followed *Vega*.  *See, e.g., Johnson v. Best Bev LLC*, No. 24-cv-1260, 2025 WL 2734204, at *7 (N.D.N.Y. Sept. 25, 2025) (Brindisi, J.) ("[T]he Court finds the First Department's decision in *Vega* more persuasive, declines to adopt the Second Department's reasoning in *Grant*, and predicts the Court of Appeals will do the same."); *Euson v. TRC Eng'rs, LLC*, No. 24-cv-1168, 2025 WL 2591847, at *8 (N.D.N.Y. Sept. 8, 2025) (Suddaby, J.) ("[T]he Court joins the vast majority of other federal district courts within the Second Circuit in finding that New York law creates a private right of action (whether it is express or implied) for a violation of pay frequency under Section 191(1)(a)."); *Covington v. Childtime Childcare, Inc.*, No. 23-cv-710, 2024 WL 2923702, at *4-5 (N.D.N.Y. June 10, 2024) (Sannes, C.J.) ("District courts sitting in this Circuit have had the opportunity to weigh-in on *Grant* and address the split in authority—all but one have continued to follow *Vega* as the predominate authority and predict that the Court of Appeals is more likely to adopt the First Department's conclusion. . . . The Court is persuaded by the reasoning of, and the conclusion reached by, the majority of its sister courts and sees no reason to depart from such rulings.") (collecting cases).  This Court agrees with the majority of district courts and finds, pursuant to *Vega*, that a private right of action exists for violations of Section 191(1)(a).  *See also Euson*, 2025 WL 2591847, at *8 ("In any event, recent amendments to the New York Labor Law

15

appear to have resolved the contentious legal issue surrounding whether N.Y. Lab. L. § 198(1-a) creates a private right of action for the enforcement of violations of N.Y. Lab. L. § 191(1)(a).") (citation omitted); *DeDyn*, 2026 WL 221434, at *7 ("[E]ven disregarding the recent amendment to § 198, almost every district court to address the split between *Vega* and *Grant* has adopted *Vega*'s reasoning.") (collecting cases).

As detailed in the Motion, and above, the Complaint plausibly alleges that each Plaintiff was not consistently paid on a weekly basis and was instead repeatedly paid late, including through piecemeal payments. *See* Dkt. No. 15-1 at 11; *supra* Section II.B. "Thus, because 'money has a real time value,' a late payment is an under payment." *Bazinett*, 720 F. Supp. 3d at 163 (quoting *Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 350 (S.D.N.Y. 2024)). Accordingly, the Court finds that Plaintiffs have established that Defendants violated the NYLL by paying them late.

### 4. NYLL Failure to Pay Promised Wage Claim

The Complaint's fourth claim is that Defendants violated the NYLL by failing to pay Plaintiffs their promised wages for the hours they worked. Dkt. No. 1 at ¶¶ 112-15.

As the Motion notes, "[s]everal courts have held that Section 191 of the New York Labor Law requires employers to pay owed wages at the promised rate, even if that rate exceeds the minimum wage." Dkt. No. 15-1 at 11 (first citing *Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-cv-6469, 2018 WL 5456654, at *13 (E.D.N.Y. Sept. 8, 2018); and then citing *Calle v. Yoneles Enters., Inc.*, No. 16-cv-1008, 2017 WL 6942652, at *7 (E.D.N.Y. Oct. 24, 2017)); *see also Goldberg v. Jacquet*, 667 F. App'x 313, 314 n.1 (2d Cir. 2016) ("Wholesale withholding of wages is covered by NYLL § 191[.]").

As detailed above and in the Motion, all Plaintiffs allege numerous instances in which they were not paid their promised hourly wages, which ranged from $15 to $30 per hour over the course

of their employment. *See supra* Section II.B; Dkt. No. 15-1 at 11-12. "Under the NYLL, a plaintiff can recover for unpaid time at the agreed-upon rate, even if it exceeds minimum wage. Section 191 of the NYLL mandates that workers 'be paid . . . in accordance with the agreed terms of employment.'" *Shi v. TL & CG Inc.*, No. 19-cv-08502, 2022 WL 2669156, at *8 (S.D.N.Y. July 11, 2022) (first citing *Kernes v. Glob. Structures, LLC*, No. 15-cv-659, 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016); and then quoting N.Y. Lab. L. §§ 191(1)(a)(i), 191(1)(d)). Accordingly, the Court finds that Plaintiffs have established that Defendants violated the NYLL by failing to pay them their promised wages.

### 5.  NYLL Wage Notice and Wage Statement Claim

The Complaint's fifth and final claim is that Defendants violated the NYLL by failing to provide them with the necessary wage notices and wage statements. Dkt. No. 1 at ¶¶ 116-21.

> Adopted as part of New York State's Wage Theft Prevention Act, Section 195 of the NYLL
>
> requires an employer to provide an employee, at the time of hiring, with a notice (1) describing the employee's rate of pay for regular and for overtime hours; (2) stating whether the employer intends to credit allowances for items such as tips, meals, and lodging toward the employee's minimum wage; (3) describing certain health care benefits; and (4) providing other basic information. N.Y. Lab. L. § 195(1)(a). In addition, each time wages are paid, the employer must furnish a statement detailing the calculation of regular and overtime pay for that pay period, along with information on deductions and minimum wage allowances. *Id.* § 195(3).

*Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024). The Second Circuit has also clarified that in order to establish standing with respect to a statutory violation of Section 195, "a plaintiff must show some casual connection between the lack of accurate notices and the downstream harm." *Id.* at 308.

The Motion first argues that the Complaint plausibly alleges that Defendants violated Section 195(1) by failing to provide Plaintiffs with written notice of their wage rates and related information in Plaintiffs' primary language, either at the time Plaintiffs each began working for

17

Defendants or at any time thereafter. Dkt. No. 15-1 at 12. The Motion next argues that the Complaint plausibly alleges that Defendants violated Section 195(3) by failing to provide Plaintiffs, throughout their employment, with accurate wage statements that included all hours Plaintiffs worked and their hourly rates of pay. *Id.* The Motion concludes that Defendants are liable as a result. *Id.* at 12-13. The Court agrees that the Complaint sufficiently alleges these violations of Section 195. *See supra* Section II.B. The Court also notes the Complaint's allegations that Plaintiffs were harmed by these statutory violations, because Defendants' failure to provide proper wage notices and wage statements to Plaintiffs "hindered their ability to confront Defendants sooner about their owed wages[,]" prevented Plaintiffs from "discover[ing] the violation of their rights sooner and avoiding some of the harm they experienced[,]" and thus "directly contributed to the amount of wage theft experienced by Plaintiffs." Dkt. No. 1 at ¶¶ 95-97. "Courts in this Circuit recognize that such allegations satisfy the downstream-harm requirement under *Guthrie.*" *Rueda v. A & G Iron Works Corp*, No. 25-cv-1791, 2026 WL 183692, at *12 (E.D.N.Y. Jan. 13, 2026) (collecting cases) (finding that plaintiffs had sufficiently alleged injury as a result of defendants' violation of Section 195 for purposes of a default judgment).

Accordingly, the Court finds that Plaintiffs have established that Defendants harmed them by failing to provide the necessary wage notices and wage statements in violation of the NYLL.

**D. Damages**

Plaintiffs seek a substantial sum of damages as a result of the years during which Defendants violated the FLSA and NYLL. Dkt. No. 15-1 at 13-29. Plaintiffs argue that an evidentiary hearing is unnecessary because their submissions provide a sufficient basis on which to calculate damages. *See, e.g., id.* at 13; Dkt. No. 15-2 at ¶ 13. The Court disagrees.

18

For instance, as detailed above, Plaintiffs have plausibly alleged that their usual weekly schedule consisted of working Monday through Saturday and a minimum of approximately fifty hours. *See supra* Section IV.C.1.ii.  But that does not plausibly suggest, for example, that Plaintiff Mendez maintained this schedule, working fifty or more hours a week, six days a week, fifty-two weeks a year, for years.  It may be conceivable that Plaintiff Mendez worked this schedule—with no holidays, no sick days, no vacation days, and no stop in work—but it appears implausible that he did so from October 2018 through February 2024, which is what his damages calculation appears to indicate.  Dkt. No. 15-12 at 2-3.[4]

Those years included a global pandemic, which, if Plaintiffs' damages calculations are credited, had no effect on the hours Plaintiff Mendez (and others) worked performing construction in New York state.  *Id.*  More importantly, Plaintiff Mendez and at least one other Plaintiff have submitted documentation suggesting that, instead of working six days and fifty hours every week, at times they worked fewer days and less hours.  *See, e.g.,* Dkt. No. 15-7 at 30, 33, 36; Dkt. No. 15-8 at ¶ 21; Dkt. No. 15-8 at 26.  The communications Plaintiffs have submitted also indicate that inclement weather prevented them from working at times, *see* Dkt. No. 15-7 at 8, 10 (Tuesday, January 23, 2024 text from Plaintiff Mendez to Defendant Friedlander stating that "[t]omorrow there is a lot of rain, we cannot work"), and also reference "the slow season for all construction [ ] in New York State[,]" Dkt. No. 15-10 at 9, further calling into question the calculation of damages that Plaintiffs have presented.  *See, e.g., Cotton v. NY Minute Movers, Inc.*, No. 20-cv-6153, 2022 WL 3684715, at *6-7 (E.D.N.Y. July 28, 2022) ("'Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any

---

[4] Except for the week of January 28, 2024 through February 3, 2024, when Plaintiff Mendez indicates that he worked approximately thirty-eight hours.  Dkt. No. 15-12 at 2.

damages even though liability has been established through default.'  That being said, because under [the] FLSA '[t]he burden is on an employer properly to record hours,' a 'plaintiff need not compute FLSA damages with precision.'  An employee may meet his burden of showing the amount and extent of his hours work[ed] through his own recollection.") (second alteration in original) (citations omitted), *report and recommendation adopted*, 2022 WL 3682833 (E.D.N.Y. Aug. 25, 2022).

Given the nature of the damages sought, the Court finds that "it is 'necessary and proper' to hold an inquest on damages" with respect to Plaintiffs' FLSA and NYLL claims.  *Cement & Concrete Workers*, 699 F.3d at 234 (quoting *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993)).  The Court further exercises its discretion pursuant to Rule 55(b)(2) and refers this matter to United States Magistrate Judge Paul J. Evangelista for a damages inquest.  *Mickalis*, 645 F.3d at 129.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiffs' Motion, Dkt. No. 15, is **GRANTED**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Paul J. Evangelista for a damages inquest; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 30, 2026
      Albany, New York

*Anne M. Nardacci*
Anne M. Nardacci
U.S. District Judge

20